**In the Interest of Sterling HAMILTON, a Minor Child.**

No. 13–97–279–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 20, 1998.

Rehearing Overruled Oct. 1, 1998.

John Worley, Assistant Attorney General, Dan Morales, Attorney General, Jorge Vega, First Asst. Attorney General, Rhonda Amkraut Pressley, Chief Appeals and Research Section, Austin, for Appellant.

Alejandro Moreno, Jr., Edinburg, for Appellee.

Before DORSEY, HINOJOSA and RODRIGUEZ, JJ.

## OPINION

HINOJOSA, Justice.

Appellant, the Office of the Attorney General of Texas, initiated an action to enforce a foreign child support order. After a hearing before a family court master, appellee, Roberto Ruiz, appealed to the district court and also filed a motion to modify the child support order. The district court signed two orders, one dated January 11, 1996, and the other January 24, 1996. Ten months after the second order was signed, Ruiz filed a Motion to Clarify Orders. The district court granted the motion and declared that the order of January 11, 1996 was the only order in effect. By a single point of error, the Attorney General contends the district court erred in granting Ruiz's motion to clarify because the later order controls. We affirm.

### Background

In 1995, the Attorney General moved to enforce a child support order issued by a Hawaiian court. The Hawaiian order required Ruiz to make monthly child support payments of $390, plus monthly payments of $50 to pay down an arrearage. Ruiz, who resided in Texas, filed a motion to modify the Hawaiian order in November 1995.

On December 6, 1995, the family court master held a hearing. The master found an arrearage of $23,200 and granted a judgment in favor of the Attorney General for that amount, plus 12% interest. The master also ordered Ruiz to pay $100 per month towards the arrearage and two lump-sum payments of $500 each before April 3, 1996. Income withholding in the amount of $490 per month was authorized. Ruiz filed his appeal from the master's decision on December 11, 1995.

On January 11, 1996, the district court heard Ruiz's appeal of the master's decision and motion to modify the child support order. Although the Attorney General's Office had notice of the hearing, no one from that office appeared. Ruiz presented the district court with an agreed order on his motion to modify, signed by appellee, Kym Hamilton, the mother of the child, and Betty Hamilton, the child's grandmother who had actual physical possession of the child. The district court approved the agreement and signed a modification order that same day.

The January 11, 1996 order reduced Ruiz's monthly child support payments to $129 and eliminated payments on the arrearage. Additionally, it required Ruiz and Betty Hamilton to split the child's uninsured health care expenses equally and provided that payments to the child from any governmental agency due to any disability Ruiz might suffer would be credited against his child support payments. Wage withholding was ordered in accordance with a separately signed wage withholding order. The order concluded with a "Mother Hubbard" clause denying all relief not expressly granted. The record reflects the order was signed on January 11, 1996, the wage withholding order was signed on January 12, and a request for issuance of order was filed on January 12.

The family court master's decision of December 6, 1995 was reduced to writing and finally signed by the master on January 18, 1996. The master's recommendation was then forwarded to the district court for adoption. On January 24, 1996, the district court signed the master's recommendation. On the same day, the district court also signed an Employer's Order to Withhold Earnings for Child Support in the amount of $490 per month. On February 13, 1996, a request for issuance of order was mailed, certified, to the Olive Garden Restaurant at 222 West Expressway 83 in McAllen, Texas. The return receipt was received on February 15, 1996. The record does not reflect why the request

was sent to the Olive Garden or who actually signed the return receipt.

On November 19, 1996, Ruiz filed a Motion to Clarify Orders requesting entry of an order "clarifying that the Order signed on January 11, 1996, takes precedence over the Orders signed on January 24, 1996." The district court heard the motion on February 13, 1997. The judge recalled approving the agreement made among all of the parties, except the Attorney General, who had failed to appear on January 11, 1996. The district court granted Ruiz's motion to clarify and declared that the order of January 11, 1996 was the only order in effect. The Attorney General timely appealed.

### Determination of Controlling Order

By a single point of error, the Attorney General contends the district court erred in granting the motion to clarify because the order of January 24, 1996 is controlling.

■ There can be only one judgment. TEX.R. CIV. P. 301. An order which purports to dispose of all issues and all parties is a final appealable order. *State v. Owens*, 907 S.W.2d 484, 485 (Tex.1995); *Normand v. Fox*, 940 S.W.2d 401, 403 (Tex.App.—Waco 1997, no writ); *Jobe v. Lapidus*, 874 S.W.2d 764, 765 (Tex.App.—Dallas 1994, writ denied). In a final judgment, no further action by the trial court will be necessary to settle and determine the entire controversy. *Normand*, 940 S.W.2d at 403; *Retana v. Tanner*, 869 S.W.2d 669, 670 (Tex.App.—San Antonio 1994, no writ). The January 11, 1996 order appears to be final.

In *State v. Owens*, 907 S.W.2d 484 (Tex. 1995), a similar situation to that of the instant case arose. Two inapposite orders were signed by the district court judge, raising the issue of which was final and appealable. *Id.* at 484–85. A hearing was held before a family court master, who determined that Owens was the father of the child in question and ordered him to pay child support. *Id.* at 485. Owens timely appealed the master's recommendation. *Id.* Prior to the hearing, the district court signed an order adopting the master's report as its own. *Id.* Owens' appeal was then heard eleven

days later. *Id.* The district court subsequently issued a second order finding that Owens was not the child's father. *Id.* The State timely appealed the second order. *Id.* The Texas Supreme Court held that "an order which purports to dispose of all issues and all parties, like the district court's first order, is a final and appealable order." *Id.* The first order became final when Owens failed to timely appeal from it. *Id.*

In the instant case, the Attorney General admittedly made no effort to appeal the district court's first order. Nevertheless, the Attorney General argues that the second order, signed before the district court's plenary power lapsed, functions as a correction, modification, amendment, or vacation of the prior order.

■ Although a trial court may, within thirty days after the entry of an order or judgment, vacate, set aside, amend, or modify such order or judgment, TEX.R. CIV. P. 329b, such action must, to be effective, be by written order that is express and specific. *McCormack v. Guillot*, 597 S.W.2d 345, 346 (Tex.1980) (adopting rule stated in *Poston Feed Mill Co. v. Leyva*, 438 S.W.2d 366, 368 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ dism'd w.o.j.). The reason for the requirement of "a clear and unequivocal written order or expression" is that, of necessity, a court must speak through its written orders; we cannot presume an intent on the part of the court to vacate, set aside, modify or amend its first order in the absence of plain speech. *See Poston*, 438 S.W.2d at 368. Any other rule would be the parent of uncertainty for the orders of any court. *Id.*

■ The second order in this case makes no reference whatsoever to the first order. There is no indication the district court actually intended to vacate, set aside, amend, or modify its first order. On the contrary, it appears the district court judge did not intend to do so. At the hearing on Ruiz's motion to clarify on February 13, 1997, the Attorney General reminded the district court judge that he had signed the family court master's report after he had signed the order following the January 11, 1996 appeal. To this the judge replied, "In other words, you snuck one by me."

The first order resulted from a timely appeal of the decision of the family court master. The district court signed the first order on January 11, 1996. It is clear that this order is final as it disposes of all issues related to child support and contains a "Mother Hubbard" clause, making it final and appealable. By its own admission, the Office of the Attorney General had notice of the appeal hearing before the district court on January 11, 1996, but failed to appear due to its own negligence. Seven days later, on January 18, 1996, the family court master signed her recommendation. Six days after that, the Order Enforcing Child Support Obligation (UIFSA) was presented to the district court judge and signed. Notice of the order was sent to the Olive Garden Restaurant at 222 West Expressway 83 in McAllen, Texas. The record does not reflect that Ruiz was employed by the restaurant, nor does the record reflect who signed the return receipt. Although he was represented by counsel, no notice of the order was sent to Ruiz's attorney. Apparently, Ruiz never received notice of the second order. Furthermore, the Attorney General could have but chose not to appeal the order of January 11, 1996, choosing to rely instead on the order of January 24, 1996.

A party who wishes to appeal the decision of a family court master must file notice of appeal within three days and obtain a hearing within thirty days of the date of the decision. TEX. FAM.CODE ANN. § 201.015(a) & (f) (Vernon 1996). The family code does not require the family court master to sign the report by any particular date, nor does it restrict when the report may be submitted to the referring court. *See* TEX. FAM.CODE ANN. § 201.111 (Vernon 1996) (requiring referring court to act on report within thirty days of filing, but providing no guidance on when report is to be filed).

If an appeal of a family court master's decision did not result in a final order, the Attorney General's Office could vacate successful appeals by obtaining the referring court's signature on a family court master's recommendation after the appeal was concluded, rather than pursue a proper appeal

to the courts of appeal. We find this offensive to our notion of justice.

The Attorney General's Office cannot be allowed to "lay behind the log," fail to appear at an appellate hearing due to its own negligence, fail to appeal the order rendered at that hearing, then seek to vacate the order rendered on appeal by means of a subsequently submitted order favorable to the Attorney General of which no notice is given to the other party or his attorney.

■ Furthermore, the successful appeal superseded the master's recommendations, even though the written report had not yet been submitted. *See* TEX. FAM.CODE ANN. § 201.013 (Vernon 1996) (decisions of family court master are in effect only during pendency of an appeal). Moreover, an appeal is a direct attack on the decisions of the lower court seeking to amend, correct, reform, or vacate the findings. *Crawford v. McDonald*, 88 Tex. 626, 33 S.W. 325, 327 (Tex.1895); *see also* BLACK'S LAW. DICT. 96 (6th ed.) (purpose of appeal is correction or reversal of error or injustice). The referring court's first order, rather than the second, amends, corrects, reforms, or vacates the announced decision of the master.

The family code mandates the filing and hearing of an appeal within a very narrow time frame. TEX. FAM.CODE ANN. § 201.015(a) & (f). We see no logic in the proposition that a successful appeal can be overturned days, weeks, or months later when the family court master finally signs the recommendation and presents it to the district court judge for approval without an express showing that the latter order is intended to vacate, amend, or otherwise modify the earlier order entered on appeal. We hold the order of January 24, 1996 to be void, as it was not intended to replace the order of January 11, 1996.

### *Authority to Enter Clarification Order*

The Attorney General contends the clarification order is not a true clarification order because it does not find that either order is not specific enough to be enforced by contempt and does not make any term of either order more specific so that it may be en-

forced by contempt. *See* TEX. FAM.CODE ANN. §§ 157.421, 157.423 (Vernon 1996).

A clarification order is analogous to a judgment *nunc pro tunc* in that it cannot substantively change a final order. *Dickens v. Willis,* 957 S.W.2d 657, 659 (Tex.App.— Austin 1997, n.w.h.). Because of the confusion between the two competing orders, Ruiz properly sought clarification to learn which order he was expected to obey. The clarification order merely states that the January 11, 1996 order is effective. Because the second order was never legally effective and could not be enforced, the sole effect of the district court's clarification order was to clarify Ruiz's obligations and correct the erroneous entry of an unenforceable order. This is not outside the power of the district court as neither order was specific enough to be enforceable until the court clarified which was, in fact, effective. *See* TEX. FAM.CODE ANN. § 157.421; *Dickens,* 957 S.W.2d at 660. We overrule the Attorney General's sole point of error.

The district court's order is affirmed.